ALBERT D. COCA and RORY COCA, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Coca v. Commissioner
Docket Nos. 3300-74, 3303-74, 3311-74.
United States Tax Court
T.C. Memo 1976-323; 1976 Tax Ct. Memo LEXIS 80; 35 T.C.M. (CCH) 1454; T.C.M. (RIA) 760323; October 20, 1976, Filed Towner Leeper, for the petitioners. Charles N. Woodward, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' income tax and additions thereto as follows: Income Tax
Addition to the Tax
Year
Deficiency
Under Sec. 6653(a) [2]
Albert D. and Rory Coca
1968
$6,738.00
$337.00
1969
7,030.00
351.50
Ernest and Bertha Coca
1968
6,859.00
343.00
1969
7,425.77
371.29
Bella Coca
1968
8,274.00
414.00
1969
9,139.84
456.99 The deficiencies resulted from respondent's reconstruction of the income of petitioners' partnership by use of the bank deposits and expenditures method. *81 The questions presented for our decision are as follows: (1) Whether respondent's determination of gross business income received by the partnership in 1968 should be reduced by $6,488.25, alleged to have been received by the partnership as a loan from petitioner Bella Coca.
(2) Whether respondent's determination of partnership gross income for 1969 should be reduced by $41,000, alleged to have been received by the partnership in loans from a customer, Isauro Medina. (3) Whether certain adjustments should be made to respondent's reconstruction of partnership income under the bank deposits and expenditures method to reflect (a) year-end accruals of sales and expenses, (b) inter-company noncash transactions, (c) noncash purchases resulting from trade-ins, and (d) noncash transfers of property for services. (4) Whether, for purposes of income averaging, the taxable income for the base period year 1967 (not at issue herein) should be the taxable income as reported in petitioners' respective returns for that year or higher amounts previously determined by respondent. (5) Whether any underpayment of taxes by petitioners was due to negligence or intentional disregard of rules *82 and regulations. FINDINGS OF FACT Some of the facts have been stipulated, and such stipulated facts are found accordingly. Petitioners Ernest and Bertha Coca are husband and wife, residing in El Paso, Texas.Petitioners Albert and Rory Coca are also husband and wife, residing in El Paso, Texas. The respective married couples filed joint Federal income tax returns for the taxable years 1968 and 1969. Petitioner Bella Coca also resided in El Paso, Texas, and filed individual income tax returns for 1968 and 1969. During the taxable years 1968 and 1969 Ernest, Albert and Bella Coca were equal partners in a partnership (herein referred to as "the partnership" or "the petitioners' partnership") engaged in the used truck business under the names Truck Sales Company and El Paso Truck Salvage Company. The partnership filed partnership income tax returns, Form 1065, for the taxable years 1968 and 1969, and the petitioner-partners each included their respective reported distributive shares of partnership net income in their personal returns. The partnership had outstanding the following accounts payable at the end of 1968 and 1969, respectively: 1968
1969
Inventory purchases
$8,425.00
$6,088.00
Other expenditures
17,235.57
547.00
*83 The partnership utilized the accrual method of accounting, and the accounts payable as of the end of each of the two respective years were included in the amounts deducted as expenses (or purchases) in the partnership returns for those years. During 1968 Truck Sales Company transferred various trucks to El Paso Truck Salvage Company. [3] These trucks had been recorded as "purchases" on the records of Truck Sales Company when acquired. When the trucks were transferred to El Paso Truck Salvage Company, the transfer was recorded as a "sale" on the records of Truck Sales Company and as a "purchase" on the records of El Paso Truck Salvage Company. The total amount recorded in this manner during 1968 was $14,320. During the taxable years in question the partnership accepted trade-ins on various sales. In such instances the full sales price of the vehicle sold was included in the partnership's records of "sales" and the amount allowed for the vehicle traded in was recorded as a "purchase". *84 The total amounts included in "purchases" (and in "cost of goods sold" as reported in the partnership's income tax returns) with respect to such trade-ins were $19,669.50 in 1968 and $16,115 in 1969. During 1969 the partnership used property, rather than cash, to pay for certain services rendered.The transfers of inventory for this purpose were recorded as "sales" of the items transferred, and an equal amount was recorded as an expense for the services rendered. The total amount so recorded in 1969 was $2,200. During the year 1968 petitioner Bella Coca sold a house in Albuquerque, New Mexico, from which she received $6,888.25. During the taxable years in question the petitioners' partnership did business with Isauro Medina, a resident of Chihuahua, Mexico. Medina was engaged in a variety of businesses in which he had use for equipment of the type sold by the partnership. In a previous action, not involved in the instant case, respondent had determined deficiencies in the income reported in petitioners' respective returns for the taxable year 1967. (These deficiencies were based upon respondent's recomputation, increasing the partnership's income for such year.) Petitioners *85 challenged these determinations in this Court on the grounds that the deficiencies were barred by the statute of limitations, and we held in petitioners' favor in a Memorandum Opinion issued in 1974. . ULTIMATE FINDINGS OF FACT (1) Petitioners' partnership understated its ordinary income for the years 1968 and 1969 in the amounts of $88,478.00 and $89,096.57, respectively. (2) Petitioners' partnership did not receive funds from Bella Coca during 1968 or 1969. (3) Petitioners' partnership did not receive nontaxable funds from Isauro Medina in 1968 or 1969. (4) The correct taxable incomes of the respective petitioners for the base period taxable year 1967 for income averaging purposes are as follows: Albert D. and Rory Coca - $9,959; Ernest and Bertha Coca - $10,559; Bella Coca - $10,558. (5) The understatement of income by the petitioners' partnership for the taxable years 1968 and 1969 and the resulting understatement of taxes on the returns of the petitioners for those years was due to negligence or intentional disregard of rules or regulations. OPINION The deficiencies determined by respondent in the income taxes *86 of the petitioners result from the recomputation of the net income of the petitioners' partnership and the allocation to each petitioner-partner of his share of the increase in partnership income determined through such recomputation. Partnership income was determined by respondent through the bank deposits and expenditures method, which technique has long been established as a reasonable method through which respondent may attempt to clearly reflect income. See, e.g., , affg. a Memorandum Opinion of this Court. Indeed, petitioners have not disputed the propriety of respondent's reconstruction of income under this method. They have, however, alleged numerous errors by respondent in his application of the method and his computations of the partnership's income thereunder. Under the bank deposits method, it is assumed that all monies received represented business income unless it can be shown otherwise. . Petitioners contend that among the partnership's receipts were a loan of $6,488.25 from Bella Coca in 1968 and loans totaling $41,000 *87 from Isauro Medina in 1969, and that respondent failed to adjust for these items, which did not represent income. Except for the testimony of Medina, discussed hereinafter, petitioners' contentions concerning these alleged loans rest almost entirely upon the self-serving testimony of the three petitioner-partners. We find such evidence unconvincing and insufficient, and we have found as facts that the partnership did not receive the alleged advances. The only evidence concerning the alleged advance from Bella Coca was the testimony of Bella Coca and Albert Coca. It has been stipulated that Bella Coca sold a house in Albuquerque for $6,888.25. Bella testified that upon receipt in Albuquerque of the check for the sale proceeds she converted the entire amount into cash, used approximately $400 to pay some bills, and placed the remainder of the cash in the trunk of her car for later delivery to Albert Coca in El Paso. The cash allegedly remained in the trunk of her car for approximately three to four weeks until she arrived in El Paso and gave it to Albert. Albert testified that he received this cash and invested it in the partnership business. While this story itself is difficult *88 to believe, its unacceptability is further enhanced by our assessment of the credibility and demeanor of the witness who presented it. Furthermore, we find it highly implausible that one would cash such a large check and then leave the cash in the trunk of her car for more than three weeks. No explanation was offered for such unusual and risky handling of over $6,000 in cash. Moreover, the testimony which was offered contained certain weaknesses. On cross-examination Bella could not remember in which year these alleged events took place. Bella testified that the cash was in hundred dollar bills or thousand dollar bills, yet Albert testified that the cash was in fifty and hundred dollar bills. Considering the foregoing, and in the absence of any evidence corroborating the self-serving testimony of Bella and Albert Coca, we are unable to find that the partnership received the alleged loan of $6,488.25 in 1968. Petitioners next contend that respondent should have reduced his determination of 1969 cash business receipts by $41,000, the total amount alleged to have been received from Isauro Medina as a loan (and not as sales proceeds).Petitioners, however, have not adequately satisfied *89 their burden of proof as to these alleged loans. Their case in this connection relies heavily upon the testimony of Medina, a long-time customer and friend of the petitioners. Medina testified that he regularly advanced sums of money to the petitioners when they needed it in their partnership business, and that these loans were periodically repaid either in cash or by the delivery of trucks and other equipment which Medina needed for use in his businesses. These advances were allegedly made on a very informal basis, with no interest charged and no collateral security. Medina testified that upon each such advance or repayment a note would be signed by one of the petitioners, evidencing the then cumulative balance of the debt to Medina, and the previously outstanding note would be destroyed. This pattern of alleged financial transactions as described by Medina is, to say the least, highly unusual, and under the circumstances, is difficult to believe. Medina and the petitioners were friends and long-time business acquaintances. This fact, although lending some credence to the informality of the alleged loans, also diminishes the value of Medina's testimony as disinterested corroboration *90 of petitioners' contentions. Even if we were to accept as credible the alleged pattern of informal advances, the evidence is not sufficient to establish that petitioners received $41,000 in non-income loans in this fashion in 1969.To establish this amount petitioners introduced into evidence a copy of an account card prepared by Medina and allegedly reflecting (in Mexican Pesos) each cash advance and each repayment from May of 1966 through December of 1972. This card reflects four separate advances in 1969, totaling to the U.S. dollar equivalent of $41,000. However, on questioning by the Court and by respondent's counsel, Medina stated that this document was not an original record of the alleged transactions, but had recently been prepared by him from his own recollection of the transactions. This raises several significant questions. First, and most important, is the absence of any original documents supporting Medina's summary. No explanation was offered for petitioners' failure to produce any original documentary evidence. Secondly, the document which was introduced into evidence raises serious doubts as to the credibility of Medina as a witness. The document is in *91 the form of a printed business ledger account card, containing 29 typed entries, each entry dated (with dates extending over a 6-1/2 year period), and each entry showing a debit or a credit and a new account balance. If this information was merely a summary of Medina's recollection of the transactions, it seems strange that it was prepared in such a formal manner, on a printed ledger form with 29 typed entries, appearing exactly like an original business record. Moreover, each of the 29 entries reflects an exact date (day, month and year) of the purported transaction. Of course, we cannot believe that Medina was able to reconstruct these exact dates, spanning 6-1/2 years, from memory. For the foregoing reasons, and based upon our observations of his demeanor on the witness stand, we conclude that the testimony of Isauro Medina, without corroborating documentary evidence, can be given little if any weight herein. Aside from the testimony of Medina and their own self-serving testimony, petitioners have presented no other significant evidence in support of the alleged $41,000 in loans. Petitioners' position suffers particularly from the absence of any documentary evidence (from *92 either Medina's side or petitioners' side) of any of the four alleged advances or the seven alleged repayment transactions in 1969. Thus, we have found as a fact that the partnership did not receive loans from Medina. Finally, we note that to the extent that trucks and other equipment may have been delivered to Medina in repayment of alleged loans, such deliveries, although accountable as sales, would not have been included in respondent's recomputation of income, since such deliveries were noncash transactions.Thus, even if we were to accept petitioners' contentions as to the $41,000 in alleged loans in 1969 (which we do not) the resulting adjustment reducing the partnership's reconstructed income would be materially offset by additional adjustments increasing such income for the repayments in kind. Petitioners contend that in computing the partnership's income under the bank deposits method, respondent failed to make proper adjustments to reflect the fact that the partnership determined income under the accrual method. First, petitioners assert that respondent failed to adjust for bank deposits which represented proceeds from sales reportable under the accrual method in the *93 year prior to the year of the deposit. However, not only have petitioners failed to show any specific transactions in which this was the case, but the schedules of respondent's calculations under the bank deposits method clearly do reflect adjustments for "receipts of prior year deposited in current year". Secondly, petitioners assert that respondent did not allow a reduction in the reconstructed income for amounts which were accrued as accounts payable at the end of each respective year. The amounts of such year-end accounts payable have been stipulated by the parties. Respondent has conceded that such adjustments should be made; however, he quite correctly points out that although year-end accounts payable operate to decrease the reconstructed income figure, the accounts payable balance at the beginning of the year has the opposite effect of increasing the reconstructed income for such year. The stipulated amounts of accounts payable are as follows: Year-end 1968
Opening balance 1969
Year-end 1969
Inventory purchases
$8,425.00
$6,088.00
Other
17,235.57 [4]
547.00
$25,660.57
$6,635.00
*94 Thus, the proper net adjustments to the partnership's reconstructed income with respect to accounts payable are as follows: 1968
1969
Increase for beginning
0 [5]
$25,660.57
accounts payable
Decrease for ending ac-
$25,660.57
6,635.00
counts payable
Net increase (decrease)
($25,660.57)
$19,025.57
in reconstructed income
Petitioners next argue that the partnership's reconstructed income must be adjusted by the total amount of certain intercompany inventory transfers.The partnership operated two different companies, Truck Sales Company and El Paso Truck Salvage Company. During 1968 Truck Sales Company transferred various trucks to El Paso Truck Salvage Company. These trucks had been recorded as purchases on the books of Truck Sales Company when acquired. When the trucks were transferred to El Paso Truck Salvage Company, the transfers, aggregating $14,320, were recorded as purchases on the records of El Paso Truck Salvage Company. Therefore, *95 petitioners contend, the amount of $14,320, is included twice in the "purchases" figure reported by the partnership, and under the mechanics of respondent's method of income reconstruction, [6] the result is an overstatement of $14,320 in the reconstructed gross income figure. Petitioners are correct in this contention, and respondent has so conceded. However, the adjustment to the partnership's reconstructed gross income is totally offset by an equal adjustment reducing the purchases figure (and the resulting cost of goods sold) as reported in the originally filed return. Thus, there would be no net effect on the understatement of partnership income as determined by respondent. *96 In the course of its business the partnership would sometimes receive trade-in vehicles in connection with its sales. In such instances the sale would be recorded at the full sales price and the trade-in recorded as a purchase, even though the customer would merely pay (or receive) the net difference in cash. It has been stipulated that the partnership recorded in this manner a total of $19,669.50 of trade-ins in 1968 and $16,115.00 in 1969. These amounts were included in the total of purchases for each of the respective years. Petitioners contend that these amounts, although classified as purchases, represent noncash transactions for which adjustment must be made in respondent's reconstruction of gross business income. [7] Here again, petitioners are correct in their contention that an adjustment should be made for the noncash expenditure; however, again they fail to recognize that such an adjustment would be entirely offset by a corresponding adjustment which would increase the reconstructed business income. Since respondent's determination of gross income is based entirely upon cash receipts and disbursements, his computation would not include the full sales prices in *97 trade-in transactions in which the cash received is only the net difference between the sales price and the trade-in allowance (which is treated by the partnership as a purchase). [8] Thus, in his reconstruction of gross income, respondent's failure to take into account trade-ins as noncash purchases is exactly offset by his failure to include the amount by which the actual sales price exceeds the cash received, by reason of the trade-in allowance. Thus, as in the case of the inter-company transfers discussed above, there is no net effect on the understatement of partnership income determined by respondent. Petitioners have raised one final accounting issue. It has been *98 stipulated that during the year 1969 the partnership paid expenses totaling $2,200 by the transfer of trucks from inventory, rather than by cash. Such transfers were recorded by increasing both sales and expenses by $2,200, the market value of the trucks transferred. [9] Petitioners contend that respondent failed to adjust his reconstruction of income to take this noncash expenditure into account. This contention fails for much the same reason as petitioners' arguments concerning the trade-ins: the noncash expenditure is offset by an equal adjustment required to increase gross revenues. Since respondent's reconstruction of gross income was based solely on cash receipts and disbursements, the amount so determined did not reflect the $2,200 which would be includible in sales with respect to the trucks transferred for services. Thus, the fact that the total reported expenditures included $2,200 of noncash transfers of inventory has no net effect on the partnership's income as reconstructed by respondent. Petitioners contend that if the adjustments increasing *99 their income are sustained, the recomputation of their respective tax liabilities for the years in question should allow them the benefit of the income averaging provisions of sections 1301-1305. Respondent concedes that petitioners are entitled to income-averaging, but there remains a dispute as to the proper amount of base-year income for 1967, a year not directly at issue herein, but one of the base period years to be used in the income-averaging computations. Respondent had previously redetermined petitioners' respective taxable incomes for 1967; however, in a 1974 Memorandum Opinion of this Court ( ) we held that respondent was barred by the statute of limitations from assessing deficiencies for that year. Respondent contends that the petitioners are required to use the "correct" amount of base period income, as determined by respondent, rather than the amount which may have been reported in the petitioners' actual returns for such base period year, even though the statute of limitations may bar any redetermination of tax for such base period year. Petitioners contend that the amounts reported in their 1967 returns must be *100 allowed as the base period taxable income for that year. This precise issue has previously been considered and decided by this Court in . In that case we held that "the income to be used for each base period year is the correct income for such year whether or not the assessment of a deficiency or the refund of an overpayment for such base period is barred by the statute of limitations." Petitioners contend that the instant situation is distinguishable, since here there has actually been a decision in this Court holding that the statute of limitations barred assessment of deficiencies for 1967, whereas in Unser there had not been such a prior court decision. We fail to see any significance in this distinction. In essence petitioners are contending that our prior decision that the statute of limitations barred deficiency assessments for 1967 constitutes a "decision that there was no deficiency," and that such decision is binding as to the correctness of the taxable income as reported in petitioners' 1967 returns.This attempt to utilize our decision on the statute of limitations issue as a basis for application of a collateral *101 estoppel concept in the determination of the proper base year income for income-averaging purposes, is clearly without merit. In deciding that the deficiencies assessed for 1967 were barred by limitations, we made no determination whatsoever as to the correctness of the amount of such determinations.Collateral estoppel can only operate as to matters actually presented and determined in the prior litigation. ; , cert. denied . Accordingly, the Unser decision controls here, and petitioners are required to utilize their "correct" taxable income as determined by respondent for the 1967 base year [10] in applying the income-averaging provisions for the recomputation of taxable income for 1968 and 1969. *102 Respondent determined additions to tax under section 6653(a) for each of the years in question. The deficiency notices show adjustments in large amounts to the income of the petitioners' partnership for two consecutive years. Such large discrepancies between real net income and reported income, and the necessity to reconstruct real net income through the bank deposits and expenditures method are strong evidence of negligence. , remanded pursuant to stipulation (9th Cir. 1954). Respondent's determination that at least some part of the underpayment for each of the years in question was due to negligence or intentional disregard of rules and regulations is presumptively correct. , affd. on this issue, ; . Since there is no evidence to the contrary, petitioners are liable for the additions to tax as determined by respondent. ; . Decisions will be entered under *103 Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Ernest Coca and Bertha Coca, Docket No. 3303-74; Bella Coca, Docket No. 3311-74.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
3. Although both of these "companies" were part of the same partnership, it appears that the partnership's business activities and certain records thereof were divided into two separate operations.↩
4. Respondent contends on brief that $14,500 of the 1968 year-end accounts payable represents nondeductible capital expenditures. Such contention relates to the deductibility of such amount as an expense, and not to the effect of such amount in the reconstruction of the partnership's gross income. However, the deductibility as an expense was not challenged in the notice of deficiency or in the pleadings and is, therefore, not properly before us.↩
5. The record does not indicate the account payable balance at the beginning of 1968. Accordingly, a zero balance is used for this computation, giving petitioners the maximum possible advantage.↩
6. Respondent's method of income reconstruction involves in part the computation of total business expenses paid by cash which has not flowed through any of the partnership's bank accounts. This cash, with certain adjustments, is deemed to have been originally received as taxable business income. In computing such cash expenditures, respondent begins with total business expenditures (including inventory purchases) as reported in the return. From this he subtracts business expenses paid by check to arrive at business expenses paid by cash. Thus, the effect of the double counting of inventory purchases, as claimed by petitioners, is to increase↩ the cash expenditures computation and thereby increase the reconstructed gross income.
7. These amounts are included in the total expenditures reported in the partnership tax returns, from which totals respondent derives the total business expenditures paid by cash. See footnote 6. ↩
8. For example, one customer purchased a vehicle for $2,500, and the partnership accepted a trade-in at $700. It is likely that the customer merely paid the net amount of $1,800. Under the cash method of reconstrucing income, only $1,800 would be picked up, even though the sale was actually for $2,500.↩
9. The original cost of the vehicles transferred remained as part of the "purchases" account and cost of good sold.↩
10. Respondent did not, in the notices of deficiency for the years 1968 and 1969, make a determination of the correct taxable income for 1967 (since he did not utilize income averaging in the 1968 and 1969 deficiency computations).However, at the outset of the trial, at the time that petitioners were granted leave to amend their petitions to assert the right to utilize income averaging for 1968 and 1969, respondent raised the issue of the correctness of petitioners' reported 1967 taxable income for income averaging base period purposes. At that time the record from the prior litigation relating to the 1967 taxable year which includes respondent's determinations of the "correct" taxable income for that year, was incorporated by reference herein. Accordingly, we deem the issue of the "correct" 1967 taxable income for income averaging base period purposes as properly before us.Petitioners having offered no evidence to show error in respondent's 1967 determinations, such amounts must be deemed the "correct" 1967 taxable income for purposes of the 1968 and 1969 income averaging computations required herein, and we have so found.↩